No. 23-30149

_____

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

CLARENCE SANTIAGO,
*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CR-031

_____

**APPELLANT'S BRIEF**

_____

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

SAMANTHA J. KUHN
Assistant Federal Public Defender

Office of the Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
(504) 589-7930
Samantha_Kuhn@fd.org

# CERTIFICATE OF INTERESTED PERSONS

*United States v. Clarence Santiago*
No. 23-30149

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.   *Defendant-Appellant:* Clarence Santiago

2.   *Counsel for Defendant-Appellant:* Federal Public Defender Claude J. Kelly and Assistant Federal Public Defender Samantha J. Kuhn

     *Former Counsel for Defendant-Appellant*: Ian Lewis Atkinson; Jerome Weldon Matthews, Jr.

3.   *Counsel for Plaintiff-Appellee:* U.S. Attorney Duane A. Evans; Assistant U.S. Attorneys Kevin G. Boitmann, Diane Hollenshead Copes, and Maurice Edwin Landrieu

     *Former Counsel for Plaintiff-Appellee*: Assistant U.S. Attorneys Elizabeth A. Privatera and Alexandra Triana Giavotella

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: August 4, 2023

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Clarence Santiago respectfully requests oral argument in this appeal, which raises numerous, interrelated factual and legal errors related to his guilty plea and sentencing proceedings. Considering the number and nature of these errors, oral argument would facilitate this Court's resolution of the appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS..............................................ii

STATEMENT REGARDING ORAL ARGUMENT...................................iii

TABLE OF AUTHORITIES....................................................................vi

STATEMENT OF JURISDICTION.............................................................1

STATEMENT OF THE ISSUES...................................................................2

STATEMENT OF THE CASE......................................................................3

SUMMARY OF THE ARGUMENT..........................................................13

ARGUMENT.............................................................................................14

    I.     Mr. Santiago's convictions on Counts 2 and 4 must be vacated due to the district court's plain Rule 11 errors. ...... 14

          A.    Standard of Review and Legal Framework. ................ 15

          B.    The district court committed clear and obvious error by failing to advise Mr. Santiago of the elements of the charged offenses................................. 15

          C.    The factual basis was plainly insufficient to prove Mr. Santiago's guilt on Counts 2 and 4. ...................... 18

          D.    The district court's Rule 11 errors affected Mr. Santiago's substantial rights and warrant correction by this Court. ............................................. 25

    II.    The district court failed to properly calculate and consider Mr. Santiago's Sentencing Guidelines range.........28

          A.    Standard of Review.................................................... 29

B.    The court legally erred by refusing to properly calculate or consider Mr. Santiago's Guidelines range for sentencing. .................................................... 31

C.    The Guidelines range that the district court ostensibly adopted was legally and factually erroneous. ...................................................... 36

D.    These Guideline errors affected Mr. Santiago's substantial rights and warrant correction by this Court. ........................................................... 46

III.    The district court's sentence was procedurally and substantively unreasonable. ................................... 48

A.    Standard of Review and Legal Framework. ................ 48

A.    The district court failed to consider all of the § 3553(a) factors and make an individualized assessment of the relevant facts. ................................. 49

B.    The district court's imposition of a 30-year sentence was substantively unreasonable. ................... 51

CONCLUSION ......................................................... 53

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

*Gall v. United States*, 552 U.S. 38 (2007) .............................. 28, 33, 49, 50

*Hill v. Lockhart*, 474 U.S. 52 (1985) ........................................ 14

*Holguin-Hernandez v. United States,* 140 S. Ct. 762 (2020) ................. 48

*Koon v. United States*, 518 U.S. 81 (1996) ........................................ 33, 49

*Matthew v. Johnson*, 201 F.3d 353 (5th Cir. 2000) ................................ 16

*McCarthy v. United States*, 394 U.S. 459 (1969) .................................... 18

*Molina-Martinez v. United States*, 578 U.S. 189 (2016) ........................ 47

*Muscarello v. United States*, 524 U.S. 125 (1998) ................................... 21

*Pepper v. United States*, 562 U.S. 476 (2011) ......................................... 49

*Peugh v. United States*, 569 U.S. 530 (2013) ...................................... 28, 33

*Rosales-Mireles v. United States*, 138 S. Ct. 1897 (2018) ..... 15, 28, 33, 47

*Rosemond v. United States*, 572 U.S. 65 (2014) ..................................... 22

*Smith v. United States*, 508 U.S. 223 (1993) .................................... 20, 21

*United States v. Adams*, 448 F.3d 492 (2d Cir. 2006) ............................ 27

*United States v. Adams*, 961 F.2d 505 (5th Cir. 1992) .............. 18, 19, 21

*United States v. Alvarado-Casas*, 715 F.3d 945 (5th Cir. 2013) ....... 15, 19

*United States v. Angeles-Mascote*, 206 F.3d 529 (5th Cir. 2000) ...... 18, 27

*United States v. Barnes*, 803 F.3d 209 (5th Cir. 2015) .......................... 24

*United States v. Booker*, 543 U.S. 220 (2005) ................................... 32, 33

*United States v. Bostic*, 970 F.3d 607 (5th Cir. 2020) ........................... 48

*United States v. Bowens*, 907 F.3d 347 (5th Cir. 2018) ......................... 17

*United States v. Burney*, 992 F.3d 398 (5th Cir. 2021) ......................... 48

*United States v. Carillo*, 860 F.3d 1293 (10th Cir. 2017) ...................... 27

*United States v. Castro-Trevino*, 464 F.3d 536 (5th Cir. 2006) ............. 15

*United States v. Cooper*, 966 F.2d 936 (5th Cir. 1992) .......................... 45

*United States v. Denson*, 183 F. App'x 411 (5th Cir. 2006) ................... 27

*United States v. Diehl*, 775 F.3d 714 (5th Cir. 2015) ............................. 52

*United States v. Fisher*, 22 F.3d 574 (5th Cir. 1994) ............................. 45

*United States v. Floyd*, 343 F.3d 363 (5th Cir. 2003) ............................. 39

*United States v. Frampton*, 382 F.3d 213 (2d Cir. 2004) ....................... 23

*United States v. Frye*, 402 F.3d 1123 (11th Cir. 2005) .......................... 18

*United States v. Garcia-Paulin*, 627 F.3d 127 (5th Cir. 2010) ......... 25, 27

*United States v. Gore*, 212 F. App'x 313 (5th Cir. 2007) ....................... 16

*United States v. Harris*, 477 F.3d 241 (5th Cir. 2007) ..................... 20, 21

*United States v. Hawkins*, 375 F. App'x 429 (5th Cir. 2010) .................. 27
*United States v. Johnson*, 943 F.3d 735 (5th Cir. 2019) ........................ 29
*United States v. Kubosh*, 120 F.3d 47 (5th Cir. 1997) ...................... 26, 27
*United States v. Lawrence*, 47 F.3d 1559 (11th Cir. 1995) .................... 39
*United States v. Lujano-Perez*, 274 F.3d 219 (5th Cir. 2001) ................ 16
*United States v. Marek*, 238 F.3d 310 (5th Cir. 2001) .......................... 19
*United States v. Marroquin*, 884 F.3d 298 (5th Cir. 2018) .................... 47
*United States v. Martinez*, 531 F. App'x 407 (5th Cir. 2013) ............ 25, 27
*United States v. Mastrapa*, 509 F.3d 652 (4th Cir. 2007) ...................... 27
*United States v. Mendiola*, 42 F.3d 259 (5th Cir. 1994) ....................... 30
*United States v. Morgan*, 117 F.3d 849 (5th Cir. 1997) ........................ 24
*United States v. Nguyen*, 854 F.3d 276 (5th Cir. 2017) ........................ 51
*United States v. Pipola*, 83 F.3d 456 (2d Cir. 1996) .............................. 23
*United States v. Rico*, 3 F.4th 1236 (10th Cir. 2021) ............................ 41
*United States v. Rodriguez*, 523 F.3d 519 (5th Cir. 2008) ..................... 39
*United States v. Salazar*, 743 F.3d 445 (5th Cir. 2014) ......................... 30
*United States v. Sanchez*, 229 F.3d 1155 (6th Cir. 2000) ...................... 39
*United States v. Sanchez-Arvizu*, 893 F.3d 312 (5th Cir. 2018) ............. 47
*United States v. Smith*, 844 F.2d 203 (5th Cir. 1988) ............................ 38
*United States v. Smith*, 997 F.3d 215 (5th Cir. 2021) ....................... 25, 27
*United States v. Soto-Silva*, 129 F.3d 340 (5th Cir. 1997) ..................... 24
*United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981) .......................... 38
*United States v. Torres-Perez*, 777 F.3d 764 (5th Cir. 2015) ................. 29
*United States v. Trejo*, 610 F.3d 308 (5th Cir. 2010) ....................... 18, 19
*United States v. Urias-Marrufo*, 744 F.3d 361 (5th Cir. 2014).............. 15
*United States v. Vasquez*, 953 F.2d 176 (5th Cir. 1992) ........................ 17
*United States v. Warren*, 720 F.3d 321 (5th Cir. 2013)......................... 51
*United States v. Washington*, 480 F.3d 309 (5th Cir. 2007) .................. 14
*United States v. White*, 762 F. App'x 212 (5th Cir. 2019) ................ 38, 40
*United States v. Windless*, 719 F.3d 415 (5th Cir. 2013) ...................... 38
*United States v. Young*, 282 F.3d 349 (5th Cir. 2002) .......................... 40
*Williams v. People of State of N.Y.*, 337 U.S. 241 (1949) ...................... 50

## STATUTES

18 U.S.C. § 2 ............................................................... 4, 32, 38
18 U.S.C. § 3553(a) ............................... v, 13, 31, 35, 49, 51, 53
18 U.S.C. § 3742.................................................................. 1
18 U.S.C. § 924(c).... 4, 11, 13, 16, 17, 20, 22, 25, 36, 41, 42, 43, 46, 50, 52

18 U.S.C. § 924(o) ............................................................ 3, 7, 37, 43, 45
21 U.S.C. § 841(a)(1) ................................................................... 3
21 U.S.C. § 841(b)(1)(D) .............................................................. 3
21 U.S.C. § 846 ........................................................................... 3
21 U.S.C. § 856(a) ........................................................... 4, 24, 25
28 U.S.C. § 1291 .......................................................................... 1
28 U.S.C. § 991(b)(1) ................................................................. 32

## FEDERAL RULES

Fed. R. Crim. P. 11(b)(1)(G) ..................................... 14, 16, 17
Fed. R. Crim. P. 11(b)(3) ................................. 14, 18, 19, 27
Fed. R. Crim. P. 32(i)(3)(B) ...................................................... 37

## SENTENCING GUIDELINES

U.S.S.G. § 1B1.2 ...................................................................... 44
U.S.S.G. § 2A2.1 ....................................................... 8, 9, 34, 37
U.S.S.G. § 2K2.1 ....................................................... 7, 36, 42, 43, 46
U.S.S.G. § 2K2.4 .............................................................. 7, 36, 42
U.S.S.G. § 3D1.2 ....................................................... 7, 8, 43, 44, 45
U.S.S.G. § 3E1.1 ...................................................................... 46
U.S.S.G. § 6A1.3(a) .................................................................. 39
U.S.S.G., Ch. 1, Pt. A ............................................................... 32
U.S.S.G., Ch. 3, Pt. D, Intro. Cmt. ....................................... 43

## OTHER AUTHORITIES

5th Cir. Pat. Instr. § 1.34 ......................................................... 38
5th Cir. Pat. Instr. § 1.39 ................................................... 38, 41
5th Cir. Pat. Instr. § 2.44A ...................................................... 20
5th Cir. Pat. Instr. § 2.44B ...................................................... 17

## STATEMENT OF JURISDICTION

This is an appeal of a final judgment in a criminal case. This Court has appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The district court entered judgment on March 7, 2023. ROA.183-90. Appellant filed a timely notice of appeal on March 16, 2023. ROA.201-02.

# STATEMENT OF THE ISSUES

(1)    Did the district court commit plain Rule 11 errors mandating vacatur of Mr. Santiago's convictions on Counts 2 and 4?

(2)    Did the district court commit reversible sentencing error by failing to properly calculate and consider Mr. Santiago's Sentencing Guidelines range?

(3)    Was Mr. Santiago's 30-year sentence procedurally and/or substantively unreasonable, independently mandating resentencing?

## STATEMENT OF THE CASE

On March 19, 2021, Clarence Santiago and two other individuals were charged in a four-count indictment with violations of federal drug and firearm statutes. ROA.11-16. Those charges arose from an incident at the Jung Hotel in New Orleans, Louisiana. On December 27, 2020, Mr. Santiago and several other people were in Room 1514 of the hotel, which they were using to store and package marijuana for sale. ROA.85-86. Another group of people came to the room around 11:55 p.m., purchased marijuana, and left the hotel. ROA.86. Shortly thereafter, the purchasers, who were all armed with semi-automatic handguns, returned to the hotel to rob the occupants of Room 1514. ROA.86. Once the door opened, the six assailants brandished their firearms, and a shootout with the occupants ensued. ROA.86.

Based on that incident, the government charged Mr. Santiago and two other occupants of Room 1514 with four federal offenses:

- Conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846 (Count 3);

- Conspiracy to possess firearms in furtherance of the drug conspiracy, in violation of 18 U.S.C. § 924(o) (Count 1);

- Using, carrying, brandishing, and discharging firearms during and in relation to the drug conspiracy, and/or aiding and abetting each

other in doing so, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2
(Count 2); and

- Maintaining a drug-involved premises, namely, Rooms 1514 and
  1509 of the Jung Hotel, in violation of 21 U.S.C. § 856(a) (Count 4).

ROA.11-13. Mr. Santiago pleaded guilty as charged to all four counts
without the benefit of a plea agreement. ROA.83, 218-19.

At Mr. Santiago's rearraignment, the district court summarized the
charges in the indictment but did not explain the specific elements the
government would have to prove to establish his guilt on any count.
ROA.212-13; *see also* ROA.208-23 (rearraignment transcript). The
factual basis for the plea described surveillance footage from the hotel,
which showed the six assailants approach Room 1514 and "brandish[]
their firearms toward the occupants inside the room." ROA.86. The
document then described the shootout that ensued, stating:

> A shootout between the six individuals and the occupants of
> the room began. [The six assailants] fled down the hall and
> back to the elevator, where they attempted to get away.
> During their escape, they continued to fire their weapons,
> while the occupants of Room 1514 continued to discharge
> their firearms, too. While in the elevator and firing their
> weapons wildly, Chris Ross [one of the six assailants] was shot
> in the backside by friendly fire.

ROA.86-88. According to the factual basis, "the seven occupants of Room
1514 immediately returned gunfire in the hallway until approximately

1:14 am when they exited their room," and "[t]he video surveillance shows several handguns and at least one rifle being repeatedly fired outside the door of Room 1514." ROA.88.

Following the shooting, "the occupants immediately ran down the hallway in an attempt to store some of their guns and drugs into Room 1509." ROA.88. The factual basis stated that Mr. Santiago "made several trips back and forth between Room 1514 and Room 1509" and "put several bags and a rifle in Room 1509," while "the other occupants went to the elevators with some of their belongings in an effort to leave before the police arrived." ROA.88. All of the occupants who immediately left were visibly armed in surveillance footage, and some were in possession of large quantities of marijuana. ROA.88-90. Mr. Santiago left by himself about a minute later. ROA.90.

Upon exiting the hotel, Mr. Santiago attempted to get into a black truck, but an officer commanded him to stop. ROA.90. Mr. Santiago fled on foot but was apprehended two blocks away. ROA.90. The officer escorted him back to the location of the truck, but the truck and its occupants were gone, and there was a handgun laying in the street where it had been parked. ROA.90. Mr. Santiago was arrested, waived his

rights, and "admitted that he was one of the individuals who was using Rooms 1514 and 1509 to illegally store and package marijuana and to store multiple firearms." ROA.90. A search warrant was executed on the rooms and led to the discovery of $576 in cash, a bag of marijuana, two large clear empty bags, three firearms, and two magazines. ROA.90.

The final paragraph of the factual basis stated:

> By pleading guilty to these charges, CLARENCE SANTIAGO, freely admits that on December 28, 2020, he and his associates were using room 1514 and 1509 of the Jung Hotel to store and repackage large quantities of marijuana for retail sale. He also admits that they were also in possession of numerous semi-automatic handguns and rifles that they used to protect their drugs and drug proceeds from rivals and/or law enforcement. SANTIAGO also admits that he and his associates sold a half pound of marijuana to Ross and his associates inside this hotel room earlier in the night. When Ross [and five others] came back later that night and attempted to rob SANTIAGO and the other occupants of Room 1514, the occupants of Room 1514 produced numerous firearms and fired multiple times at the assailants in an effort to protect themselves, their drugs, and their drug proceeds. Based on the video surveillance camera footage, shortly after the shooting as described above, SANTIAGO and his associates exited the room and attempted to hide the firearms and drugs in another room (1509) before the police arrived on the scene. Some of SANTIAGO'S associates took some of the marijuana with them in bags as they fled the hotel.

ROA.92-94. Nowhere in the factual basis was there a statement that Mr. Santiago personally shot a firearm.

On June 7, 2022, the U.S. Probation Office issued a draft Presentence Investigation Report (PSR). ROA.243-67. The PSR reflected that Mr. Santiago, who was 20 years old at the time of the offenses, had no prior arrests or convictions and thus fell within criminal history category I. ROA.257-58. In calculating his offense level, Probation determined that Counts 1, 3, and 4 grouped together pursuant to U.S.S.G. § 3D1.2, while Count 2 stood alone due to the statutory minimum constituting the Guideline sentence. ROA.254; *see also* U.S.S.G. § 2K2.4(b). Probation then determined that the adjusted offense level for Counts 1, 3, and 4 was 42. ROA.257. Following a 3-point reduction for acceptance of responsibility, Mr. Santiago's total offense level was 39. ROA.257. Mr. Santiago's resulting Guidelines range was 262 to 327 months, restricted to the 240-month and 60-month statutory maximums for the offenses. ROA.262.

In calculating the adjusted offense level of 42, Probation first determined that U.S.S.G. § 2K2.1 applied to Mr. Santiago's § 924(o) conviction. ROA.252. Probation then applied a cross-reference provision, § 2K2.1(c)(1)(A), which can result in a higher offense level if the defendant "used or possessed any firearm ammunition cited in the

offense of conviction in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition cited in the offense of conviction with knowledge or intent that it would be used or possessed in connection with another offense[.]" ROA.252-53. Probation determined that the facts of this case warranted a cross-reference to "attempted first-degree murder" and thus calculated a base offense level of 33 under U.S.S.G. § 2A2.1(a)(1). ROA.253-56. This, despite the fact that there was no record evidence that Mr. Santiago actually shot a firearm. Additionally, Probation determined that the grouping rules in U.S.S.G. § 3D1.2 required separating the § 924(o) conviction into six independent "counts"—one for each of the assailants, who Probation identified as "distinct victims" of the offense. ROA.253. That application of the grouping Guideline resulted in a 5-level enhancement, and Probation applied an additional 4-level enhancement due to one of the assailants suffering a gunshot wound. ROA.255, 257.

Through counsel, Mr. Santiago objected to "any cross reference" to attempted murder in the calculation of his Guidelines range. ROA.294-96. Counsel emphasized that Mr. Santiago had not "been accused of, charged with, or adjudicated guilty of attempted murder, nor

are the elements of count 1 in any way inclusive of attempted murder."
ROA.294. Counsel further argued that any conduct described in the
factual basis that could be characterized as "attempted murder" would
have constituted self-defense. ROA.294. Alternatively, counsel urged the
court to consider imposing a non-Guideline sentence "due to the
substantial unfairness" of the range incorporating that cross-reference.
ROA.296. Counsel concluded the objections with a request for a hearing
"where the Government would be required to carry its burden to prove
the conclusions contained in the PSR." ROA.296.

In response to Mr. Santiago's objections, Probation maintained its
position that the attempted first-degree murder cross-reference should
apply. ROA.304-05. However, Probation also provided an alternative
calculation in case the court "determine[d] that this crime would not
constitute first degree murder[.]" ROA.305. The alternative calculation
applied a cross-reference to attempted *second-degree* murder,
maintaining the additional 5-level and 4-level enhancements discussed
above. ROA.305; *see also* U.S.S.G. § 2A2.1(a). The alternative calculation
resulted in a Guidelines range of 135 to 168 months. ROA.305.

At Mr. Santiago's sentencing hearing, the district court stated that it had reviewed the defense's PSR objections and the responses of the government and Probation. ROA.230. The court then told the defense:

> [L]et me just say, . . . my sentence was crafted without a finding -- without making that finding. I have reviewed the report, the factual basis, as well as the arguments that you've presented, and I am declining to make a specific finding at this time as to the relationship between the firearm cited in the indictment and the other offense of attempted first degree murder. I don't find it to be necessary to the decision I made with reference to the defendant's sentence today.
>
> I still will allow you to make any objections you have with reference to that. But in effect, [counsel], the object of your objection, you achieved that object. I'm not going to make that determination; but in effect, your objection is moot based upon the way I've crafted defendant's sentence, okay.

ROA.230. In response, the government began to ask the court how it calculated Mr. Santiago's sentence, to which the court responded: "Well, I did not make that determination, and there will be an upward variance in the case." ROA.231.

The court proceeded to "find" that Mr. Santiago's Guidelines range was 135 to 168 months based on a total offense level 33 and criminal history category I, with a mandatory consecutive sentence of 120 months for Count 2. ROA.231. The court asked if the parties had anything to say, at which time the prosecutor explained why he believed that a sentence

at "the top end of the guidelines" was warranted. ROA.232-34. The defense requested a sentence near the 10-year statutory minimum for the § 924(c) conviction and highlighted mitigating information supporting that request, urging the court to "take note" of the fact that Mr. Santiago had no prior criminal history. ROA.234-35. Defense counsel also emphasized that Mr. Santiago "had no intention to use any violence against anyone," and "there would have been no shots" if he had not been "the subject of an attempted robbery." ROA.234. As counsel explained, it was the group of men on "the other side" of this incident who were "culpable for this violence," "not Mr. Santiago's group." ROA.235.

Following the parties' arguments, the court sentenced Mr. Santiago to a total aggregate sentence of 360 months, consisting of 240 months on Counts 1 and 4, 60 months on Count 3, and a consecutive 120-month term for the § 924(c) conviction. ROA.237; ROA.184. That sentence constituted the statutory maximums for Counts 1, 3, and 4—and a total sentence that was six years longer than what even the government deemed appropriate. ROA.286-87. In this significant variance, the district court merely recited (almost verbatim) the language that Probation provided in the PSR as potential grounds for an upward variance, stating:

> This case is shocking and disturbing. Numerous coconspirators and criminal participants fired over 80 rounds of ammunition in close quarters inside of a hotel where innocent people were sleeping and staying for the night. This reckless disregard for the safety of others by all the criminal participants clearly warrants an upward variance above the guideline range.

ROA.237; *see also* ROA.318-19 (statement of reasons); ROA.288-89 (PSR, ¶¶ 141 and 143). The district court said nothing of Mr. Santiago's specific actions or culpability. Nor did the court acknowledge or discuss the mitigating circumstances raised by the defense and identified by Probation as potential grounds for a *downward* variance—namely, that Mr. Santiago was a 21-year-old high school graduate who had no criminal history whatsoever and was suffering with untreated substance abuse issues at the time of the offense. ROA.288-89 (PSR, ¶ 142).

Mr. Santiago filed a timely notice of appeal. ROA.201-02.

## SUMMARY OF THE ARGUMENT

This appeal arises from a criminal proceeding that was riddled with error from start to finish. Mr. Santiago was charged with serious federal offenses, and he decided to plead guilty. The district court accepted his plea without advising him of the elements the offenses, and despite receiving a factual basis that was facially insufficient to prove his guilt. Then, at sentencing, the court refused to even calculate, much less consider, the applicable Guidelines range—repeatedly stating that it would not resolve a critical factual dispute. The court then imposed a total aggregate sentence of 30 years of imprisonment, consisting of 10 years for his § 924(c) conviction and the statutory maximum on each of the other convictions. That sentence was *19 years longer* than the correctly calculated Guidelines range, and *six years longer* than an improperly enhanced range that the government deemed appropriate. In selecting that sentence, the court did not conduct an individualized assessment of Mr. Santiago's conduct, history, and characteristics or consider the § 3553(a) factors. These errors worked in concert to create a fundamentally unfair proceeding resulting in an extreme, unreasonable sentence. Remand is required.

# ARGUMENT

## I.   Mr. Santiago's convictions on Counts 2 and 4 must be vacated due to the district court's plain Rule 11 errors.

"To be valid, a guilty plea must be voluntary, knowing and intelligent." *United States v. Washington*, 480 F.3d 309, 315 (5th Cir. 2007). "The longstanding test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alterative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 69 (1985) (internal quotation marks and citations omitted). The purpose of Fed. R. Crim. P. 11(b) is to ensure that a defendant's guilty plea satisfies these requirements. It specifically requires the district court to, among other things, "inform the defendant of . . . the nature of each charge to which [he] is pleading" and "determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(1)(G), (b)(3).

The district court did not comply with those obligations in this case. First, the court failed to explain the elements of any of the four offenses to which Mr. Santiago pleaded guilty. Second, the court accepted his guilty plea based on a factual basis that was plainly insufficient to prove Mr. Santiago's guilt on Counts 2 and 4. These errors each independently mandate vacatur of Mr. Santiago's convictions on Counts 2 and 4.

*A. Standard of Review and Legal Framework.*

Mr. Santiago's trial counsel did not object to the Rule 11 errors raised herein, so they are reviewed for plain error. *United States v. Alvarado-Casas*, 715 F.3d 945, 953 (5th Cir. 2013). "Under plain error review, [Mr. Santiago] bears the burden to show that (1) there is an error; (2) the error is clear and obvious; and (3) the error affects his substantial rights." *United States v. Castro-Trevino*, 464 F.3d 536, 541 (5th Cir. 2006). "The relief for error is tied to a prejudicial effect[.]" *Alvarado-Casas*, 715 F.3d at 951. In the context of Rule 11 errors, that means showing "a reasonable probability that, but for the error, [Mr. Santiago] would not have entered the plea." *Id.* (citation omitted).  If prejudicial plain error is shown, this Court should exercise its discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of the judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1905 (2018) (quotation marks and citation omitted).

*B. The district court committed clear and obvious error by failing to advise Mr. Santiago of the elements of the charged offenses.*

"To enter a knowing and voluntary guilty plea, the defendant must . . . have notice of the nature of the charges against [him]." *United States v. Urias-Marrufo*, 744 F.3d 361, 368 (5th Cir. 2014) (internal quotation

marks and citations omitted); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th Cir. 2000). "Rule 11's requirement that defendants understand the 'nature of the charge' against them refers to the elements of the offense." *United States v. Lujano-Perez*, 274 F.3d 219, 224 (5th Cir. 2001). Thus, "Rule 11(b)(1)(G)'s requirement regarding the nature of the charge is fulfilled when the defendant is informed of the elements of the offense charged." *United States v. Gore*, 212 F. App'x 313, 314 (5th Cir. 2007) (unpublished).

Here, the district court summarized the indictment but did not advise Mr. Santiago of the elements of any of the offenses to which he was pleading guilty. *See* ROA.212-13. That was clear, obvious error. Moreover, with respect to Count 2, the indictment was ambiguous regarding whether Mr. Santiago was accused of *committing* a violation of § 924(c)(1)(A)(iii) or *aiding and abetting* another person's commission of that crime, and the court's plea colloquy incorporated that ambiguity. ROA.12, ROA.212. Those two theories of guilt require proof of wholly distinct elements and mandate different evidentiary showings.

To prove Mr. Santiago violated the statute as a principal, the government had to prove that he personally used, carried, and discharged

a firearm "during an in relation to" conspiring to possess with intent to distribute marijuana. *See United States v. Bowens*, 907 F.3d 347, 352 (5th Cir. 2018). In contrast, to prove that he "aided and abetted" a violation of the statute, the government had to prove that *another person* committed the crime and that Mr. Santiago "aided and abetted each element of the substantive offense." *United States v. Vasquez*, 953 F.2d 176, 183 (5th Cir. 1992). That theory of liability required proof that Mr. Santiago "actively participated" in the drug conspiracy "with advance knowledge" that the other person would use, carry, and discharge a gun "during and in relation to" committing that crime. 5th Cir. Pat. Instr. § 2.44B (Note).

None of that information was explained to Mr. Santiago before he entered his guilty plea. The district court clearly violated Rule 11(b)(1)(G) by failing to advise Mr. Santiago of (and ensure he understood) the nature of the charges to which he was pleading guilty, including—most notably—the ambiguously charged § 924(c) offense that carried a statutory minimum sentence of 10 years to run consecutively to any other sentence imposed. As a result of this clear and obvious Rule 11 error, Mr. Santiago's plea was unknowing and involuntary.

### C. The factual basis was plainly insufficient to prove Mr. Santiago's guilt on Counts 2 and 4.

Relatedly, the district court erred in deeming the factual basis sufficient to support Mr. Santiago's guilty plea to Counts 2 and 4. This, too, violated Rule 11, constituting clear and obvious error.

Unequivocal caselaw hold that "[a] guilty plea is insufficient in itself to support a criminal conviction." *United States v. Adams*, 961 F.2d 505, 508 (5th Cir. 1992). Instead, under Rule 11(b)(3), the district court "must determine that there is a factual basis for the plea" by making "certain that the factual conduct admitted by the defendant is sufficient as a matter of law to establish a violation of the statute to which he entered his plea." *United States v. Trejo*, 610 F.3d 308, 313 (5th Cir. 2010). This requirement seeks to protect defendants who may plead guilty "without realizing that [their] conduct does not actually fall within the charge." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (citation omitted); *see also United States v. Angeles-Mascote*, 206 F.3d 529, 530 (5th Cir. 2000) (same); *United States v. Frye*, 402 F.3d 1123, 1128 (11th Cir. 2005) (noting that the rule protects "a defendant who mistakenly believes that his conduct constitutes the criminal offense to which he is pleading" (citation omitted)). "An error is plain, in this context, if it is

'clear or obvious' what the government must prove to establish the offense, and, notwithstanding that clarity, the district court accepts a defendant's guilty plea without an adequate factual basis." *Alvarado-Casas*, 715 F.3d at 951.

Although Mr. Santiago pleaded guilty to all of the offenses charged in the indictment, this Court's precedent is clear that an admission of guilt is, on its own, insufficient to support a guilty plea. *See United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc). Instead, the district court was required under Rule 11(b)(3) to "compare the conduct admitted by the defendant with the elements of the offense charged" and verify that the facts admitted by Mr. Santiago were sufficient as a matter of law to establish a violation under the relevant statute. *Trejo*, 610 F.3d at 313. "The record must reveal specific factual allegations supporting each element of the offense." *Adams*, 961 F.2d at 508. That quite clearly did not occur in this case.

1. <u>The factual basis failed to prove the elements of Count 2.</u>

As previously discussed, there was no indication at rearraignment whether Mr. Santiago was pleading guilty to Count 2 as a principal or an

19

aider and abettor. However, the factual basis was insufficient to prove his guilt under either theory.

First, to prove that he personally violated § 924(c)(1)(A)(iii), the factual basis had to establish that he knowingly used, carried, and discharged a firearm "during and in relation to" his participation in the marijuana conspiracy. That required evidence that he "actively employed" or transported a firearm that had "some purpose, role or effect with respect to" the drug conspiracy. *See* 5th Cir. Pat. Instr., § 2.44A; *see also, e.g.*, *United States v. Harris*, 477 F.3d 241, 243 (5th Cir. 2007); *Smith v. United States*, 508 U.S. 223, 238 (1993). The factual basis does not prove those elements.

In his factual basis, Mr. Santiago admitted to participating in a conspiracy to possess with intent to distribute marijuana. ROA.92. The factual basis also established that six armed men came to the hotel room, brandished firearms, and instigated a shootout with armed occupants in the room. ROA.86-88. Critically, Mr. Santiago never admitted, nor was there any evidence in the record, that he personally discharged a firearm during that incident. The only "specific factual allegation" establishing that Mr. Santiago possessed a gun was surveillance footage showing him

move a rifle to a different hotel room after the shootout was over. ROA.88; *Adams*, 961 F.2d at 508. In describing the shootout, the factual basis only refers generally to the "occupants" of the hotel room, without specifying which individuals armed themselves and, more critically, returned fire. Accordingly, the factual basis facially fails to establish Mr. Santiago's guilt as a principal—*i.e.*, that he personally carried, used, and discharged a firearm.

Moreover, even if Mr. Santiago *had* admitted to shooting a firearm during the assault, the factual basis did not support a finding that he carried, used, and discharged the firearm "in relation to" the marijuana conspiracy. *See Muscarello v. United States*, 524 U.S. 125, 137 (1998) (explaining that Congress specifically added the "in relation to" language "to prevent prosecution where guns 'played' no part in the [predicate] crime" (citing S. Rep. No. 98–225, at 314, n.819)); *see also Harris*, 477 F.3d at 243; *Smith*, 508 U.S. at 238. The use and discharge of the firearm had to have "some purpose, role, or effect with respect to" the marijuana conspiracy. *Harris*, 477 F.3d at 243. Merely possessing or using a gun while engaged in a drug trafficking offense "is not enough." *See id*. The facts of this case show that the occupants were violently assaulted by

armed robbers and returned fire in self-defense. That does not prove that the firearms were used, carried, or discharged "in relation to" the drug conspiracy.[1]

Alternatively, to prove that Mr. Santiago aided and abetted the charged § 924(c) offense, the factual basis had to establish that Mr. Santiago "actively participated in the underlying offense *with advance knowledge* that a confederate would use or carry a gun during the crime's commission." *Rosemond v. United States*, 572 U.S. 65, 67 (2014) (emphasis added). As the Supreme Court explained in *Rosemond*, the federal aiding and abetting statute "reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he *helps* another to complete its commission." *Id.* at 70 (emphasis added). "[A] person aids and abets a crime when (in addition to taking the requisite act) he intends to facilitate that offense's commission." *Id.* at 76. "An intent to advance some different or lesser offense is not, or at least not usually, sufficient: Instead, the intent must go to the specific and entire crime charged—so here, to the full scope

---

[1] The last substantive paragraph of the factual basis generically states that the "occupants" of the hotel room "fired multiple times at the assailants in an effort to protect themselves, their drugs, and their drug proceeds." ROA.92-94. However, there are no specific admissions regarding *Mr. Santiago*'s conduct or intent.

(predicate crime plus gun use) of § 924(c)." *Id.* ("To aid and abet a crime, a defendant must not just in some sort associate himself with the venture, but also participate in it as in something that he wishes to bring about and seek by his action to make it succeed." (internal quotation marks and citations omitted)).

The factual basis does not establish that Mr. Santiago had "advance knowledge" or the requisite intent that one of his co-conspirators would use or discharge a firearm during and in relation to the marijuana conspiracy. The undisputed facts of this case show that the occupants of the hotel room were violently and unexpectedly assaulted, and some of them returned gunfire. That cannot support a finding that Mr. Santiago had "advance knowledge" or intent that any co-conspirator would use and discharge a firearm, much less that they would do so "in relation to" the conspiracy to possess within intent to distribute marijuana. To prove intent, courts have made clear that "the prosecution must prove the defendant knew of the proposed crime—suspicion that it might occur is not enough—and had an interest in furthering it." *United States v. Pipola*, 83 F.3d 456, 562 (2d Cir. 1996); *see also United States v. Frampton*, 382 F.3d 213, 223 (2d Cir. 2004) ("[T]he defendant must act

with the specific intent of facilitating or advancing the principal's commission of the underlying crime."). Accordingly, the factual basis failed to prove Mr. Santiago's guilt on Count 2, and the district court clearly and obviously erred in accepting his plea to that charge.

2. The factual basis failed to prove the elements of Count 4.

Count 4 charged Mr. Santiago and his two co-defendants with a violation of 21 U.S.C. § 856(a), alleging that they "did unlawfully and knowingly rent, use and maintain Rooms 1514 and 1509 of the Jung Hotel . . . for the purpose of distributing and using marijuana" between December 27 and 28. ROA.13. Under clear circuit precedent, "[i]n determining whether a person 'maintained' a drug-involved premises under Section 856, [courts] typically consider whether a defendant (1) has an ownership or leasehold interest in the premises, (2) was in charge of the premises, or (3) exercised 'supervisory control' over the premises." *United States v. Barnes*, 803 F.3d 209, 216 (5th Cir. 2015) (quoting *United States v. Soto-Silva*, 129 F.3d 340, 346 (5th Cir. 1997)). "In addition, the term 'maintain' 'connotes a degree of continuity and duration.'" *Id.* (quoting *United States v. Morgan*, 117 F.3d 849, 854 n. 2 (5th Cir. 1997)).

Here, the factual basis did not support a finding that Mr. Santiago "maintained" the hotel room in which he and others possessed marijuana within the meaning of § 856(a). There was no evidence that he rented, paid for, or exercised any control over the room. Moreover, the factual basis only indicated that they were there on a single occasion—the evening of December 27, 2020. Accordingly, the factual basis was facially insufficient to prove Mr. Santiago's guilt on Count 4 as well.

### D. The district court's Rule 11 errors affected Mr. Santiago's substantial rights and warrant correction by this Court.

The final two requirements of plain error review are easily satisfied by these clear Rule 11 errors. First, the fact that the § 856(a) and § 924(c) convictions subjected Mr. Santiago to lengthy terms of imprisonment alone establishes a reasonable probability that he would not have pleaded guilty had he understood the nature of those offenses and realized that his admitted conduct did not satisfy the elements of the statutes. *See, e.g.*, *United States v. Garcia-Paulin*, 627 F.3d 127, 134 (5th Cir. 2010); *United States v. Smith*, 997 F.3d 215, 225 (5th Cir. 2021); *United States v. Martinez*, 531 F. App'x 407, 408 (5th Cir. 2013) (unpublished). Indeed, the § 924(c) conviction carried a minimum penalty of 10 years of imprisonment, required to run consecutively with any other

sentence imposed. *See United States v. Kubosh*, 120 F.3d 47, 49 (5th Cir. 1997) (holding that a court's acceptance of an insufficient factual basis for a § 924(c) conviction affected the defendant's substantial rights "because the district court sentenced him to five consecutive years for [that] conviction"). Additionally, Mr. Santiago did not have a plea agreement and therefore received minimal benefit for pleading guilty, and he was sentenced to a total of 30 years of imprisonment—receiving the statutory maximum sentence for his conviction on Count 4. Moreover, his total, aggregate sentence with the § 924(c) conviction exceeds the maximum sentence for his remaining convictions on Counts 1 and 3. For all of these reasons, there certainly is a "reasonable probability" that Mr. Santiago would not have pleaded guilty to the charged offenses absent the district court's Rule 11 errors.

This Court should exercise its discretion to correct these errors, which resulted in Mr. Santiago being permitted to plead guilty to serious federal crimes carrying harsh penalties, without properly understanding them or admitting to facts that actually established his guilt. This Court has routinely found it appropriate to vacate convictions when an

insufficient factual basis affected the defendant's substantial rights. *See, e.g.*, *Garcia-Paulin*, 627 F.3d at 134; *Smith*, 997 F.3d at 225.[2]

As other courts have explained, the "lack of a factual basis for a plea is a substantial defect" that is "so fundamental as to cast serious doubt on the voluntariness of the plea." *United States v. Adams*, 448 F.3d 492, 502 (2d Cir. 2006). "To allow a district court to accept a guilty plea from a defendant who did not admit to an essential element of guilt under the charge . . . would surely cast doubt upon the integrity of our judicial process[.]" *United States v. Mastrapa*, 509 F.3d 652, 661 (4th Cir. 2007); *see also United States v. Carillo*, 860 F.3d 1293, 1307 (10th Cir. 2017) ("There is no doubt that failing to correct [a Rule 11(b)(3)] error [that affected the defendant's substantial rights] would seriously affect the fairness and integrity of judicial proceedings."). And, even if this Court determined that the factual basis was not plainly insufficient, the failure to even attempt to explain the elements of the offenses to Mr. Santiago before allowing him to plead guilty seriously undermined the fairness and integrity of the proceeding.

---

[2] *See also, e.g.*, *Kubosh*, 120 F.3d at 40; *Angeles-Mascote*, 206 F.3d at 532; *Martinez*, 531 F. App'x at 408; *United States v. Hawkins*, 375 F. App'x 429, 431 (5th Cir. 2010) (unpublished); *United States v. Denson*, 183 F. App'x 411, 414 (5th Cir. 2006) (unpublished).

Accordingly, the district court's Rule 11 errors—both independently and in concert—seriously affected the fairness, integrity, and public reputation of the judicial proceedings and warrants correction by this Court. Mr. Santiago's convictions on Counts 2 and 4 must be vacated.

## II.    The district court failed to properly calculate and consider Mr. Santiago's Sentencing Guidelines range.

It is well established that sentencing judges "*must* begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process." *Peugh v. United States*, 569 U.S. 530, 541 (2013) (quotation marks and citations omitted) (emphasis in original). "Courts are not bound by the Guidelines, but even in an advisory capacity the Guidelines serve as a meaningful benchmark in the initial determination of a sentence and through the process of appellate review." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1904 (2018) (quotation marks and citations omitted). Thus, a sentencing judge commits "significant procedural error" if he "fail[s] to calculate (or improperly calculate[s]) the Guidelines range[.]" *Gall v. United States*, 552 U.S. 38, 51 (2007).

Here, the district court committed multiple Guidelines-related errors at sentencing. First and foremost, the court refused to make or consider an accurate and complete Guidelines calculation at all. The

court repeatedly stated that it would not make a determination on a disputed enhancement and chose a sentence without reference to the Guidelines. *See* ROA.230-31. Second, the district court ultimately pronounced (but refused to consider) a range that incorporated several Guideline application errors—namely, erroneous applications of the "attempted murder" cross-reference and the Guidelines' grouping rules. Thus, even if the district court *had* considered that Guidelines range in fashioning its sentence, it was erroneous and drastically higher than the correct range. For all of these reasons, Mr. Santiago's sentence must be vacated, and his case must be remanded for resentencing.

### A. Standard of Review.

"[T]his court reviews the district court's interpretation and application of the Sentencing Guidelines de novo and its findings of fact for clear error." *United States v. Torres-Perez*, 777 F.3d 764, 768 (5th Cir. 2015). However, when a Guidelines challenge is raised for the first time on appeal, the Court reviews for plain error. *United States v. Johnson*, 943 F.3d 735, 737 (5th Cir. 2019). Some of the Guideline errors discussed below were preserved by trial counsel while others were not.

The claim of error raised in Section B (*i.e.*, the court's refusal to properly calculate and consider Mr. Santiago's Guidelines range) was preserved. Prior to sentencing, defense counsel filed objections to the PSR's Guidelines calculation and requested a hearing on the disputed conclusions. Defense counsel also asked the court to consider a downward variance. Accordingly, counsel adequately "informed the court" that it wished (and expected) the court to comply with its obligation to calculate and consider the correct Guidelines range at sentencing, sufficiently preserving this error for review. *See* Fed. R. Crim. P. 51(b). Moreover, when the government began to ask how the court calculated the sentence without making a Guideline determination, the court interjected to repeat that it "did not make that determination." ROA.231. The court thus made clear that it would be futile to object to its decision to ignore the Guidelines in sentencing Mr. Santiago, and "counsel was entitled to believe that further explanation would not be welcomed or entertained" by the court. *United States v. Mendiola*, 42 F.3d 259, 260 n.2 (5th Cir. 1994); *see also United States v. Salazar*, 743 F.3d 445, 449 (5th Cir. 2014).

With respect to the challenges to the district court's "finding" that the Guidelines range was 135 to 168 months (Section C), the first two

issues (*i.e.*, the court's failure to make necessary factual findings, and the clear factual error in applying the attempted murder cross-reference) were preserved. The first was preserved for the same reasons discussed above related to the court's refusal to properly calculate and consider Mr. Santiago's Guidelines range, and the second was preserved through defense counsel's PSR objections. The final two issues (*i.e.*, the legal errors in applying the attempted murder cross-reference and the Guidelines' grouping rules) were not raised below and thus are subject to plain error review.

> B. *The court legally erred by refusing to properly calculate or consider Mr. Santiago's Guidelines range for sentencing.*

Congress created the U.S. Sentencing Commission for the primary purpose of "establish[ing] sentencing policies and practices for the Federal criminal justice system that":

(A) assure the meeting of the purposes of sentencing as set forth in [18 U.S.C. § 3553(a)(2)];

(B) provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices; and

(C) reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process[.]

28 U.S.C. § 991(b)(1). To those ends, Congress directed the Commission to promulgate the Sentencing Guidelines to achieve "a more honest, uniform, equitable, proportional, and therefore effective sentencing system." U.S.S.G., Ch. 1, Pt. A, § 3. In executing that function, the Commission conducted "extensive hearings, deliberation, and consideration of substantial public comment" to promulgate the initial Guidelines and policy statements and, in the decades that followed, has regularly modified the Guidelines based on "continuing research, experience, and analysis." *Id.* at § 2.

Although the Guidelines initially were mandatory and binding on all judges, the U.S. Supreme Court determined in *United States v. Booker*, 543 U.S. 220 (2005), that they must be advisory to pass constitutional muster. At the same time, the Supreme Court emphasized the importance of the Guidelines and the obligation of courts to correctly calculate and consider a defendant's Guidelines range at sentencing. *See Id.* at 264. As the Court explained:

[T]he Sentencing Commission remains in place, writing Guidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly. The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.

*Id.* (citations omitted).

Since *Booker*, the Supreme Court has repeatedly emphasized the requirement that district courts correctly calculate the Guidelines range and consider it as the "starting point" and "initial benchmark" in every criminal sentencing. *Gall v. United States*, 552 U.S. 38, 50 (2007); *see also, e.g.*, *Peugh*, 569 U.S. at 536-37; *Rosales-Mireles*, 138 S. Ct. at 1903-04. That is necessary "to ensure 'certainty and fairness' in sentencing." *Id.* at 1903 (quoting *Booker*, 543 U.S. at 264) (explaining that the Sentencing Guidelines "serve an important role" in the sentencing framework established by Congress, within which courts must operate). "The goal of the Sentencing Guidelines is, of course, to reduce unjustified disparities and so reach toward the evenhandedness and neutrality that are the distinguishing marks of any principled system of justice." *Koon v. United States*, 518 U.S. 81, 113 (1996).

By declining to even determine, much less consider, the correct Guidelines range at Mr. Santiago's sentencing, the district court violated

this critical mandate from Congress and the Supreme Court. Prior to sentencing, Probation calculated Mr. Santiago's Guidelines range as 262 to 327 months by applying a cross-reference to the attempted first-degree murder Guideline based on the shootout in the hotel. ROA.280-82, 287. Through counsel, Mr. Santiago vehemently objected to "any cross reference" to attempted murder, arguing that the factual basis did not support that finding and clearly showed that the hotel occupants returned fire in self-defense. ROA.294-96; *see also* ROA.84-94, 274-76. Probation maintained its position but, in an addendum, provided an alternative calculation of 135 to 168 months in case the district court determined that the object offense "would not constitute *first degree* murder." ROA.305 (emphasis added); *see also* U.S.S.G. § 2A2.1(a). In other words, Probation's alternative calculation still incorporated a cross-reference to *attempted murder*, just not first-degree. The defense's objection remained, of course, because the calculation still applied an "attempted murder" cross-reference that the defense deemed unsupported.[3]

---

[3] Notably, in responding to the defense's objections, Probation appeared to confuse Mr. Santiago for one of the armed assailants who initiated the shootout at the hotel. *See* ROA.305 ("Each of the occupants in the hotel room which the defendant and his co-conspirators fired at are considered victims of attempted murder.").

At sentencing, the district court expressly refused to make any finding regarding the cross-reference, making clear that it selected a sentence without regard to the applicable Guidelines. The court stated:

> *[M]y sentence was crafted . . . without making that finding.* I have reviewed the report, the factual basis, as well as the arguments that you've presented, and *I am declining to make a specific finding at this time as to the relationship between the firearm cited in the indictment and the other offense of attempted first degree murder. I don't find it to be necessary to the decision I made with reference to the defendant's sentence today.*
>
> I still will allow [defense counsel] to make any objections [he has] with reference to that. But in effect, [counsel], the object of your objection, you achieved that object. *I'm not going to make that determination*; *but in effect, your objection is moot based upon the way I've crafted defendant's sentence*, okay.

ROA.230 (emphasis added). The government asked "how the Court did calculate the sentence," to which the sentencing judge simply responded: "Well, I did not make that determination, and there will be an upward variance in this case." ROA.231. The court's refusal to resolve outstanding Guidelines disputes, determine the correct Guidelines range, and consider that range in deciding the appropriate sentence for Mr. Santiago violated § 3553(a) and clear, longstanding Supreme Court precedent. This serious error mandates resentencing.

### C. The Guidelines range that the district court ostensibly adopted was legally and factually erroneous.

After making clear that it did not consider the Guidelines in deciding to sentence Mr. Santiago to 30 years in prison, and refusing to resolve factual disputes central to the proper calculation, the court stated that it found Mr. Santiago's Guidelines range to be 135 to 168 months. ROA.231. Even if this Court were to assume that the sentencing judge considered that range in determining its sentence (despite the court's clear statements to the contrary) vacatur is required because the adopted range was riddled with errors. In particular, the district court legally erred in adopting that range without making the requisite factual findings. Additionally, the calculation was based on multiple legal and factual errors in the interpretation and application of the Guidelines. These errors worked in concert to dramatically increase Mr. Santiago's Guidelines range, independently mandating resentencing.

### 1. The district court did not make necessary factual findings to apply the 135-to-168-month Guidelines range.

The Guidelines range for Mr. Santiago's § 924(c) conviction was 120 months, pursuant to U.S.S.G. § 2K2.4(b). ROA.279. The ranges for his other three convictions were calculated under U.S.S.G. § 2K2.1,

which is the Guideline applicable to violations of 18 U.S.C. § 924(o).
ROA.277-79. That provision contains a "cross-reference" that permits
courts to apply the Guideline for another substantive offense if the
defendant "used or possessed any firearm or ammunition cited in the
offense of conviction in connection with the commission or attempted
commission of [that other] offense, or possessed or transferred a firearm
or ammunition cited in the offense of conviction with knowledge or intent
that it would be used or possessed in connection with another offense[.]"
U.S.S.G. § 2K2.1(c)(1)(A). Applying that cross-reference, Probation used
the attempted second-degree murder Guideline to calculate the
135-to-168-month range that the district court ostensibly adopted.
ROA.305 (citing U.S.S.G. § 2A2.1(a)(2)).

"At sentencing, the court must—for any disputed portion of the
presentence report or other controverted matter—rule on the dispute or
determine that a ruling is unnecessary either because the matter will not
affect sentencing, or because the court will not consider the matter in
sentencing[.]" Fed. R. Crim. P. 32(i)(3)(B). This rule "serves the twin goals
of obtaining a fair sentence based on accurate information and obtaining
a clear record of the resolution of disputed facts." *United States v. Smith*,

844 F.2d 203, 206 (5th Cir. 1988). Moreover, "[d]ue process requires that sentencing facts be established by a preponderance of the evidence." *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013) (cleaned up, citation omitted); *see also United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. 1981) ("Sentences based upon erroneous and material information or assumptions violate due process.").

For the court to find that Mr. Santiago's Guidelines range was 135 to 168 months, it had to conclude that Mr. Santiago committed the offense of attempted murder—an allegation he vehemently disputed. That conclusion required a finding that Mr. Santiago both fired a weapon and specifically intended to kill another person. *See* 5th Cir. Pat. Instr. § 1.34 (Attempt); § 2.52B (Second Degree Murder); *see also United States v. White*, 762 F. App'x 212, 213 (5th Cir. 2019) (unpublished). It *also* required a finding that Mr. Santiago was not acting in reasonable self-defense, that is, that Mr. Santiago did not "reasonably believe" his actions were "necessary to prevent death or great bodily harm." 5th Cir. Pat. Instr. § 1.39. The court explicitly refused to make any findings of fact regarding the attempted murder cross-reference. Accordingly, if this Court were to conclude that the district court's mere recitation of the

135-to-168-month range constituted "consideration" of that range, the sentence still must be vacated because the court did not make critical factual findings necessary to determine whether that range was accurate and supported by a preponderance of the evidence in the record.

> 2. <u>The application of the attempted murder cross-reference was clearly factually erroneous.</u>

"The Government bears the burden of proving by a preponderance of the relevant and reliable evidence that the facts support a sentencing enhancement." *United States v. Rodriguez*, 523 F.3d 519, 524 (5th Cir. 2008). "The preponderance of the evidence standard, while certainly less demanding than the 'reasonable doubt' or 'clear and convincing' standards, 'is not toothless,'" and "[i]t is the district court's duty to ensure that the Government carries this burden by presenting reliable and specific evidence.'" *United States v. Sanchez*, 229 F.3d 1155, 2000 WL 1234344, at *3 (6th Cir. 2000) (quoting *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995)); *see also United States v. Floyd*, 343 F.3d 363, 372 (5th Cir. 2003) ("[T]here must be an acceptable evidential basis for the court's factfindings at the sentencing hearing."); U.S.S.G. § 6A1.3(a) (sentencing information must bear "sufficient indicia of reliability to support its probable accuracy").

As previously noted, the crime of attempted second-degree murder requires the defendant to act with the specific intent to kill. *See White*, 762 F. App'x at 213. "Specific intent means in part that the defendant was aware of his own purposes—the defendant must act with a *conscious or deliberate goal* in mind." *United States v. Young*, 282 F.3d 349, 353 (5th Cir. 2002) (emphasis added). The undisputed facts of this case demonstrate that Mr. Santiago was in a hotel room when six armed assailants came to the door and brandished weapons, prompting the occupants of the room to return fire. As discussed in previous sections, the record does not provide any information about who among the occupants actually fired weapons, much less the details of the shooting. Accordingly, there is no evidence to support a finding that Mr. Santiago shot a weapon at anyone, much less that he did so with the specific intent to kill a person.

Moreover, even if the record showed that Mr. Santiago fired a weapon, the undisputed facts clearly mandated a finding of self-defense. Given the circumstances, it certainly was reasonable for the hotel occupants—confronted by six armed assailants who brandished their firearms once the door opened—to believe that shooting at the assailants

was "necessary to prevent death or great bodily harm." 5th Cir. Pat. Instr. § 1.39; *see also  United States v. Rico*, 3 F.4th 1236, 1239 (10th Cir. 2021) ("Under federal law, a person may resort to self-defense if he reasonably believes that he is in imminent danger of death or great bodily harm, thus necessitating an in-kind response.") Notably, neither the government nor Probation responded to Mr. Santiago's undisputed assertion of self-defense in his objection to the cross-reference. *Compare* ROA.294 (PSR objection), *with* ROA.297-303 (government's response) and ROA.304-05 (Probation's response). Accordingly, even if sufficient, reliable facts supported a finding that Mr. Santiago shot at the assailants with the specific intent to kill them, the cross-reference for attempted second-degree murder should not have applied.

3. <u>The application of the attempted murder cross-reference was clear and obvious legal error.</u>

Application of the attempted murder cross-reference was erroneous for another reason: the Sentencing Guidelines clearly prohibited it based on Mr. Santiago's conviction under § 924(c). This clear, obvious legal error independently renders the cross-reference improper.

Mr. Santiago's conviction on Count 2 for violating § 924(c) carried a statutorily mandated 10-year sentence, which had to run consecutively

to any sentence he received on the other counts. U.S.S.G. § 2K2.4(b)
provided that the Guidelines range for his § 924(c) conviction was the
statutory minimum of 10 years. And the commentary to § 2K2.4 provides
specific instructions for situations when a § 924(c) conviction and another
firearm offense stem from the same conduct. Specifically, Note 4 states
in relevant part:

> If the explosive or weapon that was possessed, brandished,
> used, or discharged in the course of the underlying offense
> also results in a conviction that would subject the defendant
> to an enhancement under . . . §2K2.1(b)(6)(B) (pertaining to
> possession of any firearm or ammunition in connection with
> another felony offense), do not apply that enhancement. A
> sentence under this guideline [for the § 924(c) conviction]
> accounts for the conduct covered by these enhancements
> because of the relatedness of that conduct to the conduct that
> forms the basis for the conviction under 18 U.S.C. . . . § 924(c).

§ 2K2.4, cmt. Note 4. In other words, the Guidelines range for a firearm
offense should not be enhanced based on the defendant's use of the
firearm "in connection with" another offense if the defendant is *also*
convicted under § 924(c) for the same conduct—the exact situation here.

Although that commentary does not mention § 2K2.1(c)(1) by name,
the commentary to § 2K2.1 clearly indicates that § 2K2.1(c)(1) and
§ 2K2.1(b)(6)(B) function the same. *See* § 2K2.1, cmt. Note 14(A)
(identifying the distinguishing feature that "subsection (c)(1) contains

the additional requirement that the firearm or ammunition be cited in the offense of conviction"); *see also* § 2K2.1, cmt. Note 14(E) ("In determining whether subsections (b)(6)(B) *and* (c)(1) apply, the court must consider the relationship between the instant offense and the other offense, consistent with relevant conduct principles." (emphasis added)).

Accordingly, since Mr. Santiago was convicted and sentenced for a § 924(c) violation based on the same shooting that generated the cross-reference under § 2K2.1, the application of that cross-reference was clearly erroneous.

4. <u>The application of the Guidelines' grouping rules was clear and obvious legal error.</u>

Mr. Santiago's Guidelines range was also improperly enhanced by Probation's erroneous application of the grouping rules in U.S.S.G. § 3D1.2. Specifically, his conviction under § 924(o) could not be separated into individual "counts" based on the number of assailants involved in the shootout. This was clear, obvious error under the plain language of the Guidelines.

Part D of the Sentencing Guidelines "provides rules for determining a single offense level that encompasses all the counts of which the defendant is convicted." U.S.S.G., Ch. 3, Pt. D, Intro. Cmt. The rules

43

apply to "multiple *counts*"—they do not permit breaking a single count into several sub-counts for enhancement purposes. The only exception to that rule is when a defendant is "convicted of *conspiring to commit several substantive offenses* and also of committing one or more of the substantive offenses." U.S.S.G. § 3D1.2, cmt. Note 8 (emphasis added). Only in that scenario should a court "treat the conspiracy count as if it were several counts, each charging conspiracy to commit one of the substantive offenses." *Id.*

That rule is derived from U.S.S.G. § 1B1.2(d), which states: "A conviction on *a count charging a conspiracy to commit more than one offense* shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit." (emphasis added). The Guidelines provide examples illustrating that type of circumstance. "For example, where a conviction on a single count of conspiracy establishes that the defendant *conspired to commit three robberies*, the guidelines are to be applied as if the defendant had been convicted on one count of conspiracy to commit the first robbery, one count of conspiracy to commit the second robbery, and one count of conspiracy to commit the third robbery." § 1B1.2, cmt.

Note 3; *see also* § 3D1.2, cmt. Note 8 (providing an example where a defendant was convicted of "conspiring to commit offenses A, B, and C"). Notably, the Guidelines explicitly caution:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was *the object of the conspiracy*. In such cases, subsection (d) should only be applied with respect to an *object offense alleged in the conspiracy count* if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

§ 1B1.2, cmt. Note 4 (emphasis added).

Accordingly, the Guidelines make clear that a conspiracy conviction may only be separated into multiple "counts"—and thus may only be treated as separate "groups"—if the indictment charged a multi-object conspiracy. *See, e.g.*, *United States v. Fisher*, 22 F.3d 574, 576 (5th Cir. 1994); *United States v. Cooper*, 966 F.2d 936, 939-41 (5th Cir. 1992). That was not the case here. The sole object of Mr. Santiago's § 924(o) conspiracy conviction was to "possess firearms in furtherance of a drug trafficking crime." ROA.12. Probation clearly erred in treating separate instances of alleged harm as independent "counts," resulting in an improper 5-level enhancement to Mr. Santiago's offense level. *See* ROA.278-82.

### D. These Guideline errors affected Mr. Santiago's substantial rights and warrant correction by this Court.

Each of the plain errors discussed above improperly increased Mr. Santiago's Guidelines range, independently requiring resentencing. Without the attempted murder cross-reference, Mr. Santiago's base offense level would have been 12 because he had no criminal history and was not a prohibited person. See § 2K2.1(7).[4] Based on the number of firearms identified in the indictment and PSR, a 2-level enhancement would likely apply under § 2K2.1(b)(1). *See* ROA.14; ROA.275-76. Mr. Santiago would receive a 2-level reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a) & (b), resulting in a total adjusted offense level of 12. Combined with his criminal history category of I, Mr. Santiago's resulting Guidelines range should have been 10 to 16 months, for an aggregate sentencing range of 130 to 136 months when combined with his § 924(c) conviction. The district court sentenced Mr. Santiago to nearly three times that range, imposing an aggregate sentence of 30 years of imprisonment.[5]

---

[4] Based on the information in the record, none of the firearms involved in the offense appear to satisfy the definition in 26 U.S.C. § 5845(a). If the offense did involve such a weapon, Mr. Santiago's base offense level would be 18. *See* § 2K2.1(5).

[5] Even if the attempted second-degree murder cross-reference remained, correction of the grouping error alone would reduce his range to 78 to 97 months.

The Supreme Court and this Court have repeatedly recognized that when a defendant is sentenced based on an incorrect Guidelines range, the error itself is generally sufficient to show prejudice affecting his substantial rights and to satisfy the fourth prong of plain error review. *See, e.g.*, *Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016)**Error! Bookmark not defined.**; *Rosales-Mireles*, 138 S. Ct. at 1911; *United States v. Marroquin*, 884 F.3d 298, 301 (5th Cir. 2018); *United States v. Sanchez-Arvizu*, 893 F.3d 312, 317 (5th Cir. 2018). "The prejudice is even stronger when the correct Guidelines range is below the defendant's sentence[.]" *Id.* And "[t]he risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error." *Rosales-Mireles*, 138 S. Ct. at 1908.

The district court's refusal to calculate and consider the Guidelines range, and its purported adoption of an erroneous range at sentencing, prejudiced Mr. Santiago and seriously affected the fairness, integrity, and public reputation of the judicial proceedings. The primary purpose of

the Guidelines is to promote fairness and proportionality at sentencing, and due process entitles defendants to have sentencing facts found by a preponderance of reliable evidence. The district court's procedures violated those central tenets of criminal sentencing. This Court should exercise its discretion to correct these serious, impactful errors.

## III. The district court's sentence was procedurally and substantively unreasonable.

### A. Standard of Review and Legal Framework.

Criminal sentences are reviewed for reasonableness. *United States v. Bostic*, 970 F.3d 607, 610 (5th Cir. 2020). "When a defendant preserves his objection to the reasonableness of a sentence, review is for an abuse of discretion, examining the totality of the circumstances." *United States v. Burney*, 992 F.3d 398, 399-400 (5th Cir. 2021). Mr. Santiago's counsel requested a downward variance and asked the district court to consider Mr. Santiago's individualized circumstances and take note of specific mitigating factors. Accordingly, the claims of error raised in this section were sufficiently preserved. *See* ROA.229; *see also Holguin-Hernandez v. United States,* 140 S. Ct. 762, 766-67 (2020) (holding that a request for a lower sentence than that which is imposed is sufficient to preserve a challenge that the sentence is substantively unreasonable).

A. *The district court failed to consider all of the § 3553(a) factors and make an individualized assessment of the relevant facts.*

As previously discussed, the district court procedurally erred, and thus abused its discretion, by failing to properly calculate and duly consider Mr. Santiago's Guidelines range at sentencing. *See Gall*, 552 U.S. at 49. The court also abused its sentencing discretion by failing to consider other § 3553(a) factors and failing to conduct an individualized assessment in sentencing Mr. Santiago. These additional procedural errors independently mandate resentencing in this case.

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 113. "Underlying this tradition is the principle that the punishment should fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 487 (2011) (quotation marks and citation omitted). To that end, sentencing judges are required to conduct individualized assessments and consider all of the § 3553(a) factors to determine a sentence that will be "sufficient, but not greater than necessary" to achieve the statutory sentencing goals of just

punishment, deterrence, public protection, and rehabilitation for the specific person being sentenced. *See Gall*, 552 U.S. at 50. "Highly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Williams v. People of State of N.Y.*, 337 U.S. 241, 247 (1949); *see also Pepper*, 562 U.S. at 488.

Mr. Santiago faced a mandatory minimum sentence of 10 years for his § 924(c) conviction, and his counsel presented mitigating information in support of a negligible sentence on the remaining counts. Notably, the requested sentence was close to what Mr. Santiago's properly calculated Guidelines range recommended. Disregarding the Guidelines entirely, and ignoring the defense's arguments, the district court imposed the statutory maximum sentence for the remaining counts: 20 years, to run consecutively to his 10-year sentence. In doing so, the court did not consider any of Mr. Santiago's individualized circumstances, most notably, his lack of any prior criminal history whatsoever and his relative culpability in the offenses. Indeed, the court's entire explanation for its upward variance was the total number of rounds fired during the shootout and the recklessness exhibits "by all the criminal participants."

ROA.237. The court said nothing about Mr. Santiago as an individual, did not consider his personal history, characteristics, or relative culpability, and did not attempt to craft a sentence that would be "sufficient, but not greater than necessary" for Mr. Santiago.

The district court's abuse of discretion in failing to consider all of the § 3553(a) factors and craft an individualized sentence independently requires remand for resentencing.

> B. *The district court's imposition of a 30-year sentence was substantively unreasonable.*

"A sentence is substantively unreasonable if it (1) does not account for a factor that should have received significant weight, (2) gives significant weight to an irrelevant or improper factor, or (3) represents a clear error of judgment in balancing the sentencing factors." *United States v. Warren*, 720 F.3d 321, 332 (5th Cir. 2013) (quotation marks and citation omitted). "In reviewing a challenge to the length of a non-Guidelines sentence, this [C]ourt may take the degree of variance into account and consider the extent of a deviation from the Guidelines." *United States v. Nguyen*, 854 F.3d 276, 283 (5th Cir. 2017) (internal quotation marks and citations omitted). "[A] 'significant variance' from the Guidelines is permitted where it is 'commensurate with the

individualized, case-specific reasons provided by the district court.'" *Id.* (quoting *United States v. Diehl*, 775 F.3d 714, 724 (5th Cir. 2015)).

The sentence imposed in this case was *19 years longer* than the correct Guidelines range and *six years longer* than the sentence the government believed was appropriate. As discussed above, the district court did not account for several factors that should have received significant weight—most notably, the applicable Guidelines range, Mr. Santiago's lack of any prior criminal history whatsoever, and the undisputed fact that neither Mr. Santiago nor any his co-conspirators caused the violence that ensued. The court then gave significant weight to an irrelevant factor: the unexpected and violent assault committed by other individuals *against* Mr. Santiago and his co-conspirators. The conduct of others is not an aggravating circumstance relevant to any of the sentencing factors as applied to Mr. Santiago.

The district court's extreme upward variance represents a clear error of judgment in balancing the sentencing factors. The severity of Mr. Santiago's offense conduct was fully captured by the correctly calculated Guidelines range of 10 to 16 months, especially in light of the mandatory 10-year sentence for the § 924(c) offense. There were no

aggravating factors justifying a variance, much less a *19-year variance*. Certainly, after applying the erroneous Guideline for the crime of attempted murder, there was no reason to sentence above the Guidelines. Mr. Santiago's 30-year sentence clearly is far longer than necessary to comply with § 3553(a) based on the individualized circumstances of his case. His sentence must be vacated.

## CONCLUSION

For the foregoing reasons, Clarence Santiago respectfully asks this Court to vacate his convictions on Counts 2 and 4 or, alternatively, vacate his sentence and remand for resentencing.

Respectfully submitted,

CLAUDE J. KELLY
Federal Public Defender
Eastern District of Louisiana

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
500 Poydras Street, Suite 318
Hale Boggs Federal Building
New Orleans, Louisiana 70130
Telephone: (504) 589-7930
Email: samantha_kuhn@fd.org

# CERTIFICATE OF SERVICE

The undersigned certifies that on August 4, 2023, the foregoing brief was filed with the Clerk of Court via the electronic filing system, which will send an electronic Notice of Docket Activity to the following Filing Users:

> Kevin G. Boitmann, kevin.boitmann@usdoj.gov,
> Diane Hollenshead Copes, diane.copes@usdoj.gov, and
> Maurice Edwin Landrieu, maurice.landrieu@usdoj.gov,
> Assistant United States Attorneys.

"The court's electronic Notice of Docket Activity constitutes service of the filed document on all Filing Users." 5TH CIR. R. 25.2.5.

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender

# CERTIFICATE OF COMPLIANCE

The undersigned certifies that:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,694 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). A motion to expand the word limit has been filed with this brief.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with serifs in Century Schoolbook, 14-point font for text and 12-point font for footnotes.

3.  This brief complies with the privacy redaction requirement of Fed. R. App. P. 25(a)(5), 5th Cir. R. 25.2.13, and Fed. R. Crim. P. 49.1, because it has been redacted of personal data identifiers.

4.  This electronic submission is an exact copy of the paper document, in compliance with 5th Cir. R. 25.2.1.

5.  This brief is free of viruses because it has been scanned for viruses with the most recent version of Symantec Endpoint Protection, in compliance with 5th Cir. ECF Filing Standard A(6).

*/s/ Samantha Kuhn*
SAMANTHA J. KUHN
Assistant Federal Public Defender
Dated: August 4, 2023